**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**Bowling Green Division**

| | |
|---|---|
| EVEREST NATIONAL<br>INSURANCE COMPANY,<br><br>                              PLAINTIFF,<br><br>v.<br><br>WKU STUDENT LIFE FOUNDATION, INC.<br><br>Serve:  Michael S. Vitale, Registered Agent<br>            918 State Street<br>            Bowling Green, KY 42101<br><br>and<br><br>SEWELL AND SEWELL ARCHITECTS, PLLC<br><br>Serve:  Matthew Sewell, Registered Agent<br>            5300 Scottsville Road<br>            P.O. Box 50046<br>            Bowling Green, KY 42104<br><br>                              DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. <u>1:26-CV-83-GNS</u> |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Everest National Insurance Company ("Everest"), by and through undersigned counsel, for its Complaint for Declaratory Judgment against Defendants WKU Student Life Foundation, Inc. ("SLF") and Sewell and Sewell Architects, PLLC ("Sewell"), alleges as follows:

**INTRODUCTION**

1.      This is an action for declaratory judgment under 28 U.S.C. §§ 2201–2202 and Fed. R. Civ. P. 57 arising from a dispute over insurance coverage under a professional liability policy issued by Everest to Sewell.

2.      Everest seeks a declaration that three lawsuits brought by SLF constitute "Related Claims" under the policy because they arise from "Interrelated Wrongful Acts" sharing a common nexus.

3.      Under the policy, "Related Claims" are deemed a single "Claim" subject to one limit of liability.  The policy further states "Related Claims" are treated as having been made at the date of the earliest such claim.

4.      SLF's three lawsuits are "Related Claims" as defined by the policy because they arise from related architectural services, involving overlapping alleged design deficiencies, shared project relationships, and common factual predicates.

5.      SLF's three lawsuits are further deemed to apply only under the Everest policy in effect when the earliest-such claim was reported to Everest.

6.      SLF contends that multiple limits and policies apply to its three claims, rather than the single limit stated under the applicable policy.

7.      The dispute over the available policy limits has materially impaired settlement negotiations in the underlying lawsuit, creating a concrete and immediate controversy affecting the parties' rights.

### THE UNDERLYING ACTIONS

8.      SLF has filed multiple lawsuits against Sewell relating to the design of student housing at Western Kentucky University: Hilltopper Hall, Normal Hall, and Regents Hall (collectively, the "Underlying Actions").

9.      The Underlying Actions assert substantially similar claims for breach of contract and professional negligence based on alleged deficiencies in Sewell's architectural design and contract administration services.

10. The Complaint filed by SLF regarding Hilltopper Hall (the "Hilltopper Hall Complaint," attached as **Exhibit 1**), the Complaint filed regarding Normal Hall (the "Normal Hall Complaint," attached as **Exhibit 2**) and the Complaint filed regarding Regents Hall (the "Regents Hall Complaint," attached as **Exhibit 3**) contain substantially similar allegations and causes of action.

11. Those complaints assert overlapping factual allegations regarding alleged design defects, breaches of professional standards, and resulting damages. *See* **Exs. 1, 2, and 3** at pp. 2–6.

## I.  PARTIES, JURISDICTION, AND VENUE

12. Everest is a Delaware corporation with its principal place of business in Warren, New Jersey.

13. Sewell is a Kentucky limited liability company with its principal place of business in Bowling Green, Kentucky.

14. SLF is a Kentucky nonprofit corporation with its principal place of business in Bowling Green, Kentucky. *See* **Ex. 1** at p. 2; **Ex. 2** at p. 2.

15. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a).

16. Venue is proper under 28 U.S.C. § 1391.

17. This action presents an actual case or controversy concerning Everest's rights and obligations under the Policy.

## II.  THE EVEREST POLICY

18. Everest issued Architects & Engineers Professional Liability Policy No. AAEP000279-221 to Sewell for the policy period from December 5, 2022 through December 5, 2023 (the "221 Policy," attached as **Exhibit 4**).

19. Everest issued Architects & Engineers Professional Liability Policy No. AAEP000279-231 to Sewell for the policy period from December 5, 2023 through December 5, 2024 (the "231 Policy," attached as **Exhibit 5**).

20. Everest issued Architects & Engineers Professional Liability Policy No. AAEP000279-241 to Sewell for the policy period from December 5, 2024 through December 5, 2025 (the "241 Policy," attached as **Exhibit 6)**.

21. The 221, 231, and 241 Policies each provide limits of $2,000,000 per Claim and $2,000,000 in the aggregate. *See* **Exs. 4, 5, and 6** at p. 1.

22. The 221, 231, and 241 Policies each provide that "**CLAIM EXPENSES SHALL REDUCE THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS[.]**". *See* **Exs. 4, 5, and 6** at p. 1 (emphasis, capitals in original).

23. The 221, 231, and 241 Policies each state that they "**COVER[] ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD[.]**" *See* **Exs. 4, 5, and 6** at p. 1 (emphasis, capitals in original).

24. The 221, 231, and 241 Policies each define a "Claim" to include a written demand for monetary damages arising from the performance of Sewell's "Professional Services". **Ex. 4** at p. 27; **Exs. 5 and 6** at p. 17.

25. The 221, 231, and 241 Policies each state that their limit of liability "is the most the Insurer will pay for all **Loss** regardless of the number of **Insureds, Claims** or claimants." **Ex. 4** at p. 13; **Exs. 5 and 6** at p. 12.

26. The 221, 231, and 241 Policies each state that "[a]ll **Related Claims** shall be deemed a single **Claim**" and "[s]uch single **Claim** shall be deemed to be first made on the date the

earliest of such **Related Claims** is first made against any **Insured** regardless of whether such date is before or during the **Policy Period**." *See* **Ex. 4** at p. 13; **Exs. 5 and 6** at p. 12.

27.    The 221, 231, and 241 Policies each define "Related Claims" as follows:

> **Related Claims** means all **Claims** for **Wrongful Acts** or **Interrelated Wrongful Acts**, which in whole or part, have as a common nexus any fact, circumstance, event, transaction, written service agreement, cause, or series of causally or logically connected facts, circumstances, events, transactions, written service agreements or causes **,** regardless of whether the **Claim** or **Claims** alleging such acts involves the same or different claimants, causes of action or are brought in the same or different jurisdictions.

*See* **Ex. 4** at p. 22; **Exs. 5 and 6** at p. 21.

### III.    FACTUAL BACKGROUND

#### A.  The related WKU student-housing projects.

28.    Between 2017 and 2019, SLF retained Sewell to provide architectural and contract administration services for multiple student housing projects at Western Kentucky University.

29.    These projects included Hilltopper Hall, Normal Hall, and Regents Hall.

30.    The projects were undertaken pursuant to a series of related purchase orders and proposals issued by SLF to Sewell.

31.    SLF issued a purchase order for Freshman Village design services, for Hilltopper Hall (attached as **Exhibit 7**), followed by additional purchase orders for Normal Hall (attached as **Exhibit 8**) and Regents Hall (attached as **Exhibit 9**).

32.    These agreements reflect a continuing and related course of dealing between the same parties for student housing development projects. *See* **Exs. 7, 8 and 9** at p. 1.

33.    Sewell's architectural services proposal (the "Architectural Services Proposal," attached as **Exhibit 10**) confirms that the services provided included architectural design, preparation of construction documents, and contract administration. *See* **Ex. 10** at p. 1.

34.    Each of the projects involved the preparation of architectural drawings and construction documents for student housing facilities at WKU.

**B.  The overlapping alleged design defects.**

35.    SLF alleges that the buildings contain design deficiencies arising from Sewell's professional services.

36.    These allegations are based on reviews of Sewell's design documents and construction drawings.

37.    SLF retained Brown + Kubican Structural Engineers to evaluate the buildings.

38.    Brown + Kubican's preliminary structural analysis of Hilltopper Hall (the "Hilltopper Structural Report," attached as **Exhibit 11)** identifies serious concerns regarding the building's structural system.

39.    The report describes the structural system as unconventional and potentially inadequate. *See* **Ex. 11** at p. 1.

40.    Brown + Kubican and associated consultants also identified deficiencies in fire-rated assemblies in Hilltopper Hall.

41.    The Hilltopper architectural deficiency report (the "Hilltopper Fire-Rating Report," attached as **Exhibit 12**) identifies deficiencies in fire-resistance assemblies and noncompliant gypsum board installations. *See* **Ex. 12** at pp. 2–3.

42.    Brown + Kubican conducted similar analyses for Normal Hall and Regents Hall.

43.    The resulting assessment report (the "Normal and Regents Assessment Report," attached as **Exhibit 13**) identifies structural deficiencies, including overstressed members, connection issues, and deficiencies affecting building stability. *See* **Ex. 13** at pp. 3–6.

44.    These reports demonstrate that the alleged deficiencies arise from similar or overlapping issues in the design documents across the projects.

45.    Further, SLF contends that Hilltopper, Normal, and Regents Halls all suffer from the same fire-rating deficiencies allegedly caused by Sewell's professional negligence.

### C. The underlying litigation

46.    On September 1, 2023, Dr. Catherine LaRoche, Assistant Vice President for Student Engagement and Executive Director for Housing & Residence Life at Western Kentucky University, sent a letter to Sewell alleging displacement of the structural masonry blocks at the west corner of Hilltopper Hall (the "LaRoche Letter", attached hereto as **Exhibit 14**).

47.    Sewell notified Everest of the LaRoche Letter and related claim correspondence during the 221 Policy's effective coverage period (December 1, 2023 email from S. Milliner and Loss Notice, attached hereto as **Exhibit 15**).

48.    The Loss Notice supplied by Sewell identified a "Date of Loss" of November 20, 2023

49.    SLF filed suit against Sewell for the alleged defects in Hilltopper Hall on May 17, 2024. **Ex. 1**.

50.    Everest appointed counsel for Sewell to defend it from the Hilltopper suit, and issued a letter stating that it was affording coverage under reservation of rights under the 221 Policy, as the Hilltopper claim was reported to Everest during the 221 Policy's effective period. (the "Initial Coverage Letter," attached as **Exhibit 16**).

51.    Subsequently, on September 26, 2025, SLF provided notice of a potential claim for defects at Normal Hall (attached as **Exhibit 17**).

52.     Also on September 26, 2025, SLF provided separate notice of a potential claim for defects at Regents Hall (attached as **Exhibit 18**).

53.     SLF filed separate lawsuits asserting design defects at Normal Hall and Regents Hall on March 20, 2026.  *See* **Exs. 2 and 3**.

54.     All three of SLF's complaints assert substantially similar claims against Sewell for breach of contract and professional negligence. *See* **Exs. 1, 2, and 3**.

55.     The complaints allege that Sewell breached its professional duties in connection with the design and construction of the buildings.

56.     The complaints rely on overlapping factual allegations and legal theories.

**D.  Everest's coverage position**

57.     As noted, Everest agreed to afford Sewell a defense for the Hilltopper Hall lawsuit under reservation of rights.  **Ex. 16**.

58.     Everest subsequently agreed to defend Sewell from the Regents and Normal Hall claims, also subject to a reservation of Everest's rights (the "Supplemental Coverage Letter," attached as **Exhibit 19**).

59.     Everest appointed the same counsel to defend Sewell from all three claims.

60.     Everest advised Sewell, in the Supplemental Coverage Letter, that all three claims constituted "Related Claims".  *See* **Ex. 19**.

61.     Everest further advised Sewell in the Supplemental Coverage Letter that, under the terms of the 221 Policy, all three Claims would be treated as having been asserted under the 221 Policy, given that the first-reported claim (Hilltopper), was reported to Everest during the 221 Policy's effective coverage period.  **Ex. 19**.

## IV.    THE UNDERLYING ACTIONS ARE "RELATED CLAIMS".

62.    The Policy aggregates claims that share a "common nexus" or arise from causally or logically connected facts. *See* **Ex. 4** at p. 13; **Exs. 5 and 6** at p. 12.

63.    The Underlying Actions arise from a common course of professional services performed by Sewell for SLF in connection with student housing projects at WKU.

64.    The claims involve the same parties, similar contractual relationships, and the same type of architectural and design services.

65.    The allegations in each action concern deficiencies in the preparation of design documents and construction drawings as well as the provision of construction contract-administration services.

66.    The same engineering firm evaluated each of the three buildings and identified similar categories of deficiencies, including the following:

a.    Each building had unconventional or inadequate structural systems and lateral supports.  **Ex. 12** at 1, 2, & 4; **Ex. 13** at 6, 17.

b.    Each building had overstressed members and excessive deflections.  **Ex. 12** at 2; **Ex. 13** at 5 and 15.

c.    Each building had floor/ roof assemblies that did not match the required fire-rating designs.  **Ex. 11** at 2, 7; **Ex. 13** at 29, 32-33.

67.    The underlying complaints assert substantially similar causes of action based on overlapping factual allegations, including the following:

a.    Sewell's liability and errors arose from purchase orders "whereby Sewell agreed to provide architectural services and contract administration services[.]"  **Ex. 1**, ¶ 4; **Ex. 2**, ¶ 10; **Ex. 3**, ¶ 10.

    b.    Sewell made "errors and omissions in the professional services Sewell provided[.]" **Ex. 1**, ¶ 14; **Ex. 2**, ¶ 17; **Ex. 3**, ¶ 18.

    c.    Sewell breached its contracts with SLF by "failing to provide adequate design and construction documents" and "failing to properly administer" the contract. **Ex. 1**, ¶¶ 16-17; **Ex. 2**, ¶¶ 20-21; **Ex. 3**, ¶¶ 21-22.

    d.    Sewell "breached its duty of care" in providing professional services to SLF. **Ex. 1**, ¶ 21; **Ex. 2**, ¶ 25; **Ex. 3**, ¶ 26.

68. These common facts, defects, and allegations constitute a "common nexus" and a series of causally and logically connected circumstances within the meaning of the Policy. **Ex. 4** at p. 13; **Exs. 5 and 6** at p. 12.

69. Accordingly, the Underlying Actions constitute "Related Claims" and must be treated as a single Claim.

70. Further, all three Claims are treated under the policies as having been first made at the time of the earliest such claim. *See* **Ex. 4** at p. 13; **Exs. 5 and 6** at p. 12.

71. The earliest of the three claims was for Hilltopper Hall, and it was reported to Sewell and Everest during the 221 Policy's period of coverage. *See* **Exs. 14, 15, and 16.**

72. Therefore, all three claims are treated as a single "Claim" under the 221 Policy.

## V.    **ACTUAL CONTROVERSY**

73. On May 23, 2025, SLF made a "policy limits" demand under the 221 Policy for $2,000,000 to resolve the Hilltopper claim. (the "Hilltopper Demand", attached as **Exhibit 20**).

74. On April 20, 2026, SLF made a "policy limits" demand under the 241 Policy for $2,000,000 to resolve the Normal and Regents claims (the "241 Policy Settlement Demand Letter," attached as **Exhibit 21**).

75.    Everest, however, has agreed to tender a single $2,000,000 limit (reduced by defense costs) under the 221 Policy.

76.    SLF contends that multiple limits apply, specifically, $2,000,000 for the Hilltopper claim (under the 221 Policy) and a separate $2,000,000 for the Normal and Regents claims (under the 241 Policy).

77.    The parties' disagreement over applicable coverage amounts has impeded settlement of the Underlying Actions.

78.    The dispute presents a real and immediate controversy regarding the parties' rights and obligations under the Policy.

## COUNT I – DECLARATORY JUDGMENT

79.    Everest incorporates by reference the preceding paragraphs.

80.    An actual, justiciable controversy exists between Everest and Defendants regarding the interpretation of the 221, 231, and 241 Policies and the amount of coverage available under each Policy.

81.    The controversy is concrete and immediate, as SLF has demanded payment exceeding the 221 Policy's single-claim limit.

82.    Resolution of this dispute will determine Everest's obligations with respect to defense and indemnity under the Policy.

83.    A declaratory judgment will resolve uncertainty regarding coverage and facilitate resolution of the Underlying Actions.

84.    SLF contends that the Hilltopper claim is subject to a single $2,000,000 limit under the 221 Policy and that the Normal and Regents claims are separately subject to an additional $2,000,000 limit under the 241 Policy.

85.     Everest disputes this and seeks a declaration that all three claims are Related Claims deemed a single Claim under the 221 Policy

## COUNT II – DECLARATORY JUDGMENT

86.     Everest incorporates by reference the preceding paragraphs.

87.     An actual, justiciable controversy exists between Everest and Defendants regarding whether the 221 Policy or the 241 Policy applies to SLF's claims.

88.     The controversy is concrete and immediate, as SLF has demanded payment under inapplicable policies exceeding the 221 Policy's single-claim limit.

89.     Resolution of this dispute will determine Everest's obligations with respect to defense and indemnity under the 221 and 241 Policies.

90.     A declaratory judgment will resolve uncertainty regarding coverage and facilitate resolution of the Underlying Actions.

91.     SLF has demanded payment under the 241 Policy for the Normal and Regents claims.

92.     Everest seeks a declaration that, because the claims are Related Claims, they are deemed first made when the Hilltopper claim was reported and therefore are covered only under the 221 Policy and not—as urged by SLF—under the 241 Policy.

## THE GRAND TRUNK FACTORS

93.     Exercising jurisdiction will settle the controversy because a declaration will determine whether the Underlying Actions are subject to a single policy limit.

94.     A declaration will clarify the legal relations among the parties by establishing that the Normal, Regents, and Hilltopper claims are defined to constitute a single "Claim" subject to a single limit provided by the 221 Policy.

95.     Everest has not engaged in procedural fencing; rather, it seeks a determination of its contractual rights and obligations following SLF's demand for coverage exceeding the Policy limits.

96.     A declaration will not increase friction with state courts, because this action concerns an entirely different subject than those under review by the Warren Circuit Court in the Underlying Actions.

97.     Specifically, this suit concerns Everest's duties under the 221, 231, and 241 Policies, while the Underlying Actions concern SLF's substantive allegations of design and construction defects, as well as SLF's damages.

98.     The coverage issues presented here are not being litigated in the state court actions.

99.     The factual issues relevant to coverage—namely, the relationship among the claims and the nature of the alleged design services—are distinct from the liability issues in the Underlying Actions.

100.    No alternative remedy is more effective than a federal declaratory judgment to resolve these discrete coverage issues.

## **PRAYER FOR RELIEF**

WHEREFORE, Everest respectfully requests that the Court:

A.  Declare the rights and obligations of the parties under the 221 Policy;

B.  Declare the rights and obligations of the parties under the 231 Policy;

C.  Declare the rights and obligations of the parties under the 241 Policy;

D.  Declare that the Underlying Actions constitute "Related Claims";

E.  Declare that the Underlying Actions are deemed as a single Claim made under the 221 Policy;

F.  Declare that neither the 231 Policy nor the 241 Policy apply to the Underlying Actions;

G. Declare that only one $2,000,000 limit, under the 221 Policy, applies to the Underlying Actions;

H. Declare the effect of defense costs on the 221 Policy's $2,000,000 limit;

I. Declare Everest's duties, if any;

J. Award all appropriate relief; and

K. Trial by jury on all issues so triable.

Respectfully Submitted,

/s/*Samuel W. Wardle*_____
Samuel W. Wardle
FBT GIBBONS LLP
400 W. Market St., 32nd Floor
Louisville, KY 40202
T: (502) 589-5400
F: (502) 581-1087
swardle@fbtgibbons.com

0164484.0823252  4929-8986-3593